## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HSC ORGANICS LLC,

      Plaintiff,

v.                               Case No: 8:21-cv-1852-WFJ-CPT

RYAN L. BYMASTER,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

This matter comes before the Court on Defendant Ryan L. Bymaster's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 33. Plaintiff HSC Organics LLC filed a response in opposition, Dkt. 44, to which Defendant replied, Dkt. 47. On May 19, 2022, the Court heard cogent oral argument from the parties concerning this matter. Dkt. 50. Upon careful consideration, the Court grants Defendant's motion.

## BACKGROUND

Co-founded by Florida resident Greg Smith in 2013, Plaintiff is a Florida limited liability company that markets and sells organic products designed to treat hydrophobic soil and revitalize and maintain turf grass. Dkt. 13 ¶¶ 2, 12, 18. Defendant, a United States citizen and resident of Mexico, met Mr. Smith in 2009

while both men were living in Mexico. *Id.* ¶¶ 11−12. During that time, Mr. Smith developed the products that the plaintiff company would later be founded to market and sell to golf courses. *Id.* ¶¶ 12−13.

When Mr. Smith met with golf course maintenance professionals in Mexico to discuss his products, Defendant would serve as his translator. *Id.* ¶ 13. In their interactions, Mr. Smith supposedly shared with Defendant his plans to start a company called "HSC Organics" to sell the products. *Id.* ¶ 14. Defendant, however, claims the pair came up with the HSC Organics name together. Dkt. 33 at 3. In 2011, while the men continued to work together in Mexico, Defendant registered and paid for the American Internet domain name "hscorganics.com." Dkt. 13 ¶ 16; Dkt. 34 ¶ 15. Defendant listed "LatAm Services" as the registrant and Mexico as the registrant country. Dkt. 13 ¶ 16. Plaintiff states that Mr. Smith did not know of or consent to Defendant's registration of the American website. *Id.* Defendant, however, denies that Mr. Smith lacked knowledge of this registration. Dkt. 34 ¶ 16.

Upon leaving Mexico, Mr. Smith and others founded the plaintiff company in Apollo Beach, Florida, in 2013. Dkt. 13 ¶ 18. Plaintiff contends that, since its founding, it has continuously used the trademark "HSC ORGANICS" (the "Wordmark") to promote its products and services in interstate commerce. *Id.* ¶ 19. Mr. Smith and others also founded HSC Organics SA de CV ("Mexican HSC

2

Organics") to serve as Plaintiff's sister company in Mexico. *Id.* ¶¶ 9, 12. Plaintiff supplied its sister company with proprietary and patented formulations necessary to produce Plaintiff's products. *Id.* ¶ 30. Mr. Smith thereafter engaged Defendant, who remained in Mexico, to market both companies and operate Mexican HSC Organics. *Id.* ¶ 23. In 2015 and 2016, Mr. Smith purportedly gave Defendant membership units in both companies as past and future consideration for his services. *Id.* ¶ 25.

In June 2015, Defendant allegedly registered a second Internet domain name without the knowledge or consent of Plaintiff or Mexican HSC Organics. *Id.* ¶¶ 26–27. This time, Defendant paid for and registered the Mexican Internet domain name "hscorganics.mx" and listed himself as the registrant. *Id.*; Dkt. 33 at 5. As with his registration of the American website, Defendant asserts that Mr. Smith knew Defendant was going to register the Mexican website. Dkt. 34 ¶ 16. Despite its allegations that it was not apprised of Defendant's registrations, Plaintiff maintains that it continuously used both the American and Mexican websites to promote its goods and services. *Id.* ¶¶ 32–34. Plaintiff further states that it paid for the creation of a combination word-and-logo mark (the "Logo") seen on both websites and has exclusively used that Logo since July 2015. *Id.* ¶¶ 21, 31.

For the next few years, Defendant and Mr. Smith appeared to have a harmonious business relationship. The record reflects that Defendant created

marketing materials for Plaintiff, managed the two websites, emailed Plaintiff's newsletters to Florida golf courses, and attended a January 2020 golf industry show in Orlando, Florida, on Plaintiff's behalf. *See* Dkt. 44-1 at 78−117. At some point, however, the parties' business relationship deteriorated.

In December 2020, without Plaintiff's knowledge or consent, Defendant filed a trademark application with the United States Patent and Trademark Office ("USPTO") in Virginia to register the Logo in his name. Dkt. 13 ¶ 38. In his application, as well as his answer to Plaintiff's opposition submitted to the USPTO, Defendant stated that he was the rightful owner of the Logo and that Plaintiff was merely licensing the Logo from him. Dkt. 44-1 at 57, 65.

Plaintiff asserts that Defendant then took control of the American and Mexican websites in early 2021 to redirect Internet traffic from the former to the latter. Dkt. 13 ¶ 39. Around this time, Defendant also allegedly caused Plaintiff and its employees' email addresses, which were listed on the websites, to be redirected to Defendant. *Id.* ¶¶ 36, 42. According to Plaintiff, Defendant has since been using the Wordmark, Logo, and "confusingly similar" marks on the Mexican website without Plaintiff's consent. *Id.* ¶ 44. Plaintiff further alleges that Defendant has placed false copyright notices on the Mexican website, suggesting that Plaintiff is not the copyright owner of the website's content. *Id.* ¶ 46. After learning of these actions, Plaintiff and Mexican HSC Organics ended their working relationship with

Defendant. *Id.* ¶ 49.

After Defendant allegedly took control of the American and Mexican websites, Mr. Smith registered a new website for the plaintiff company, found at www.hscorganics.net. *Id.* ¶ 47. Mr. Smith thereafter received a trademark infringement email from a web hosting server relaying a notice from Defendant. *Id.* ¶ 81. That October 2021 notice stated that Plaintiff's new website domain or content "may be infringing on a trademark and/or violating local laws or regulations." *Id.*; Dkt. 13-2. Plaintiff contends that this notice made clear that Defendant was claiming ownership over the Wordmark, Logo, and American and Mexican websites' content. Dkt. 13 ¶ 82.

Based on the above allegations, Plaintiff brings a five-count Amended Complaint against Defendant. In Count I, Plaintiff asserts that Defendant engaged in unfair competition in violation of the Lanham Trademark Act ("Lanham Act"), 15 U.S.C. § 1125(a). *Id.* ¶¶ 56−61. Next, Count II alleges a violation of the Digital Millennium Copyright Act ("DCMA"), 17 U.S.C. § 1202(a). *Id.* ¶¶ 62−69. In Count III, Plaintiff brings a common law trademark infringement claim. *Id.* ¶¶ 70−76. Count IV asserts a violation of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Section 501.201−.213, Florida Statutes. *Id.* ¶¶ 77−79. Finally, Plaintiff's Count V seeks a declaratory judgment that Defendant does not own the rights to the Wordmark, Logo, or the content found on the American and

Mexican websites. *Id.* ¶¶ 80−86. Defendant now moves to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Dkt. 33.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a district court may dismiss a complaint for lack of personal jurisdiction. Where a nonresident defendant asserts the absence of personal jurisdiction, a court must engage in a three-step, burden-shifting analysis. *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 848 (11th Cir. 2020). First, the plaintiff bears the initial burden of alleging sufficient facts in its complaint to establish a prima facie case of jurisdiction. *Id.* (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009)). Next, if the complaint contains sufficient facts, and the defendant submits affidavit evidence to support its position that personal jurisdiction is lacking, the burden shifts back to the plaintiff to produce affidavits or other competent evidence supporting jurisdiction. *Id.*; *Mazer*, 556 F.3d at 1274. Finally, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diulus*, 823 F. App'x at 848 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

## ANALYSIS

Whether a district court has personal jurisdiction over a defendant is governed by a two-part analysis. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). The court must first ask whether the relevant state long-arm statute is satisfied. *Id.* If the state long-arm statute is satisfied, the court must next determine whether exercising personal jurisdiction over the defendant comports with the Fourteenth Amendment's Due Process Clause. *Id.* The Court begins its analysis by turning to the first inquiry.

### A.  Florida's Long-Arm Statute

Codified as section 48.193, Florida Statutes, Florida's long arm statute permits two kinds of jurisdiction: specific and general. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006). Specific jurisdiction is based upon a defendant's activities within the forum state that relate to the cause of action alleged by the plaintiff. *Id.* General jurisdiction, on the other hand, arises from the defendant's contacts with the forum state that are not directly related to the plaintiff's cause of action. *Id.* Because Plaintiff only asserts the existence of specific jurisdiction,[1] the Court need not analyze whether general jurisdiction applies.

The specific jurisdiction inquiry is conducted as to each claim separately, as

---

[1] Dkt. 13 ¶ 8; Dkt. 44 at 8.

there is no such thing as supplemental personal jurisdiction. *CJS Sols. Grp., LLC v. Tokarz*, No. 3:20-cv-65-MMH-JRK, 2021 WL 848159, at *9 n.9 (M.D. Fla. Mar. 5, 2021) (citations omitted). In relevant part, Florida's long-arm statute provides for a court's specific jurisdiction over a foreign defendant who commits a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(2). Plaintiff bases its argument for personal jurisdiction on this provision. Dkt. 13 ¶ 8.

According to Plaintiff, each of its claims against Defendant asserts a tortious act committed within Florida. *Id.*; Dkt. 44 at 9−10. Indeed, Plaintiff's Amended Complaint—which asserts common law trademark infringement and declaratory judgment claims, as well as violations of the Lanham Act, DMCA, and FUDTPA—alleges tortious acts. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (common law trademark infringement); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 957 (11th Cir. 2013) (DMCA); *Licciardello v. Lovelady*, 544 F.3d 1280, 1283−84 (11th Cir. 2008 (Lanham Act); *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1236 (M.D. Fla. 2021) (FUDTPA). All of the tortious activity alleged by Plaintiff, apart from the filing of the trademark application, concerns the American and Mexican websites. The Court must determine whether these alleged tortious acts were "committed" in Florida such that they satisfy section 48.193(1)(a)(2).

"[U]nder Florida law, a nonresident defendant commits 'a tortious act within

8

[Florida]' when he commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton*, 736 F.3d at 1353 (emphasis in original) (quoting *Lovelady*, 544 F.3d at 1283). The physical location in which a foreign defendant creates a website and posts allegedly infringing material is not relevant. *Id.* at 1354. Instead, the issue is whether that defendant's tortious acts concerning a website caused injury in Florida. *Id.* In considering this question, the Court is required to construe Florida's long-arm statute as understood by the Florida Supreme Court. *Oriental Imps. & Exps., Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890−91 (11th Cir. 1983).

As the Florida Supreme Court held in *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214−15 (Fla. 2010), a nonresident's website results in no tort committed in Florida and therefore fails to subject him to Florida's long-arm statute unless a person in Florida viewed the website. While *Internet Solutions* concerned defamation claims, other federal courts in this state have applied the *Internet Solutions* holding to claims of trademark infringement. *See Volt, LLC v. Volt Lighting Grp., LLC*, 369 F. Supp. 3d 1241, 1245 (M.D. Fla. 2019); *see also PeopleShare, LLC v. Vogler*, No. 21-cv-62308-BLOOM/Valle, 2022 WL 1404605, at *5−6 (S.D. Fla. May 4, 2022); *Moccio v. Bossbabe Societe, Inc.*, No. 8:21-cv-210-KKM-AEP, 2021 WL 4847034, at *3 (M.D. Fla. Oct. 18, 2021); *Jackson-Bear Grp., Inc. v. Amirjazil*, No. 2:10-cv-332-FtM-29SPC, 2011 WL 1232985, at

*5−6 (M.D. Fla. Mar. 30, 2011).

However, even if a person in Florida views a foreign defendant's website, a "passive" website that simply offers information about a company and its products will not give rise to personal jurisdiction on its own. *Volt*, 369 F. Supp. 3d at 1248−49 (collecting cases). As the Eleventh Circuit has explained, "[t]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction." *Fraser v. Smith*, 594 F.3d 842, 874 (11th Cir. 2010) (citations omitted).

Here, as it pertains to Plaintiff's claims surrounding the websites, the Court finds that Plaintiff has failed to show a tortious act committed in Florida pursuant to section 48.193(1)(a)(2). While the Mexican website—and the American website that was purportedly redirected to the Mexican website—may have been accessible in Florida, Plaintiff has not claimed that any customer in Florida viewed it. Moreover, Plaintiff does not allege that these websites were ever anything other than passive websites. Defendant contends that the Mexican website is merely an informational, Spanish-language website that is not used to sell any products, Dkt. 33 at 10, and Plaintiff does not dispute that characterization, *see* Dkt. 44 at 16−17. Accordingly, Defendant's alleged tortious acts concerning these passive websites, which were not claimed to have been viewed by anyone in Florida, are insufficient

to satisfy Florida's long-arm statute.[2]

With the website allegations failing to satisfy Florida's long-arm statute, the only other alleged tortious action underlying some of Plaintiff's claims is Defendant's trademark application submitted to the USPTO in Virginia. Plaintiff provides no reasoning and cites no authority as to why this action satisfies Florida's long-arm statute. The Court is not convinced that the act of filing a trademark application, by itself, constitutes a tortious act committed in Florida.[3] As explained below, however, this action fails to give rise to specific jurisdiction even if it satisfies Florida's long-arm statute.

For these reasons, the Court finds that Plaintiff has not carried its burden of establishing that this Court's exercise of jurisdiction over Defendant would accord with Florida's long-arm statute.

## B. Due Process

Even if Florida's long-arm statute reaches Defendant, the Court finds that its

---

[2] While Plaintiff attempts to rely on *JCS Industries LLC v. DesignStein LLC*, No. 6:19-cv-544-Orl-37EJK, 2019 WL 5391192 (M.D. Fla. Oct. 22, 2019), for the proposition that an allegedly infringing website need not be viewed by a person in Florida to satisfy Florida's long-arm statute, that case is distinguishable. There, the website was an active website through which Florida residents bought the defendant's allegedly infringing products. *Id.* at *1, *4. Conversely, the websites at issue here are passive and provide no mechanism for online sales.

[3] For example, claims of unfair competition under the Lanham Act require a showing of both infringement *and use* of the infringing mark in commerce. 15 U.S.C. § 1125(a)(1); *see, e.g.*, *Simone v. VSL Pharms., Inc.*, No. TDC-15-1356, 2017 WL 658711, at *8 (D. Md. Feb. 16, 2017) (finding that the act of filing a trademark application is not, by itself, a basis for a Lanham Act claim). Plaintiff has not asserted any use of the allegedly infringing material other than through the passive websites that fail to satisfy Florida's long-arm statute.

exercising of personal jurisdiction over Defendant would not comport with the due process guarantee of the Fourteenth Amendment. In assessing the satisfaction of due process in this context, a court must engage in a three-prong minimum contacts test. *Louis Vuitton*, 736 F.3d at 1355; *Fraser*, 594 F.3d at 850. First, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum. *Louis Vuitton*, 736 F.3d at 1355. Second, the defendant must have purposefully availed itself to the benefits of the forum through those contacts. *Id.* This prong may be assessed under the traditional purposeful availment test or what is known as the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). *Id.* at 1356. Third, the exercise of personal jurisdiction must comport with "traditional notions of fair play and substantial justice." *Id.* at 1355. The plaintiff bears the burden of satisfying the first two prongs. *Id.* If the plaintiff carries that burden, the defendant "must make a compelling case that the exercise of jurisdiction would violate the traditional notions of fair play and substantial justice." *Id.* (quoting *Diamond Crystal Brands*, 593 F.3d at 1267).

Concerning the first prong, the Court finds that Plaintiff has not demonstrated that its claims arise out of or relate to Defendant's contacts with Florida. While there need not be a "strict causal relationship" between a defendant's contacts with the forum and the litigation, this "does not mean anything goes." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,

1026 (2021). The Eleventh Circuit has emphasized the need to adhere to principles of foreseeability and fairness in assessing this prong. *Oldfield v. Pueblo De Bahia, S.A.*, 558 F.3d 1210, 1222−24 (11th Cir. 2009) (citations omitted). Specifically, a defendant's contacts must be such that the defendant could reasonably foresee causing harm within Florida and being subjected to its jurisdiction. *Id.* at 1223.

Here, Plaintiff fails to allege any contact between Defendant and Florida that gives rise or relates to its claims. Plaintiff largely relies on contacts Defendant made while acting on Plaintiff's behalf or with its permission before the parties' business relationship soured. For example, Plaintiff states that Defendant created marketing materials for, and helped manage, Plaintiff's booth at the January 2020 golf industry show held in Orlando, thereby giving rise to each of Plaintiff's claims. Dkt. 44 at 12. Yet Defendant's conduct surrounding that trade show was carried out with the plaintiff company's approval and for its benefit. Dkt. 44-1 at 89−117 (showing Defendant's trade show preparation with Mr. Smith and others from the plaintiff company). Plaintiff does not, for example, claim that Defendant attended the golf industry show to market infringing materials or compete against Plaintiff. The trade show contacts cited by Plaintiff ultimately do not give rise or relate to Plaintiff's claims.

Equally unavailing is Plaintiff's attempt to rely on the newsletters Defendant emailed to Florida golf courses to market Plaintiff's products and services. The

record reflects that Defendant emailed those newsletters on behalf of Plaintiff and with Mr. Smith's knowledge and input. *See, e.g.*, Dkt. 44-1 at 40, 141, 154, 165. The newsletters were created and distributed for Plaintiff's benefit. Like Defendant's actions surrounding the trade show, Defendant's distribution of the newsletters fails to satisfy the first prong of the minimum contacts test.

Plaintiff also purports that each of its claims arises out of several instances in which Defendant was in contact with Mr. Smith and others, whom "[Defendant] knew to be located in the Tampa Bay area." Dkt. 44 at 11−12. These instances of texting, calling, and emailing Mr. Smith and other Florida residents fail to support Plaintiff's position. As the Supreme Court has explained, the minimum contacts test "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citations omitted).

Regardless, Defendant's communications with Florida residents did not give rise or relate to any of Plaintiff's claims. The communications that Plaintiff cites were carried out for Plaintiff and with its knowledge. For example, Plaintiff points to Defendant's emails to Plaintiff's Florida employees regarding changes being made to the websites. Dkt. 44 at 12. The record reflects that Defendant made those website changes at Mr. Smith's direction and with his approval. Dkt. 44-1 at 126−27, 130. The other communications cited by Plaintiff present the same pitfall:

14

Defendant was acting on behalf of, and to the benefit of, Plaintiff. *See, e.g.*, *id.* at 98−111, 132−33 (showing Defendant sought Mr. Smith's input and approval on marketing materials, product labels, and website content). Accordingly, even if these occurrences amount to Florida contacts, they do not give rise or relate to Plaintiff's claims. Defendant could not have reasonably foreseen being subjected to Florida's jurisdiction as a result of those actions. *See Oldfield*, 558 F.3d at 1223.

Plaintiff also asserts that each of its claims arises from Defendant's knowledge of the plaintiff company's location in Florida, ownership of membership units in the plaintiff company, and representation on LinkedIn of his managerial role at the plaintiff company. Dkt. 44 at 11. None of these are Florida contacts that give rise to Plaintiff's claims. While it may be relevant in the analysis of other alleged contacts, the isolated fact that Defendant knew Plaintiff to be located in Florida is not a jurisdictional contact. Likewise, Defendant's alleged ownership of membership units in the Plaintiff company does not give rise or relate to any claim alleged by Plaintiff. According to the Amended Complaint, Plaintiff gave Defendant the membership units in 2015 and 2016 as consideration for his past and future work for the plaintiff company. Dkt. 13 ¶ 25.

As to the LinkedIn account attributed to Defendant, the account lists Defendant as having served as the "Business Development Manager" for "HSC Organics" since October 2011. Dkt. 44-1 at 68. The only reference made to Florida

is found within a two-page embedded flyer advertising the plaintiff company and listing its Florida business address in the bottom corner of both pages. *See id.* at 67−75. Plaintiff does not allege that the "Business Development Manager" title is inaccurate representation of the title held by Defendant during the duration of the parties' business relationship; rather, Plaintiff appears to take issue with the accuracy of that representation as it applies today. Defendant contends that the cited LinkedIn account is an old account that he no longer uses and points the Court to his new LinkedIn account, which does not represent that he currently holds a position within the plaintiff company. Dkt. 47 at 4; Dkt. 47-11 at 7−11 (the new account).

Other courts have found LinkedIn accounts to not be competent evidence. In demonstrating a defendant's contacts with the forum, a plaintiff "must make a showing with affidavits or other competent evidence. . . . A LinkedIn profile, presumably obtained from the internet, is neither." *Richcourt Allweather Fund, Inc. v. Midanek*, Civ. No. 13-4810, 2014 WL 1582630, at *5 (D.N.J. Apr. 21, 2014) (citations omitted); *see also Tank v. Deutsche Telekom, AG*, Civ. No. 11-4619, 2013 WL 1707954, at *2 (N.D. Ill. Apr. 19, 2013); *Shkolnikov v. JPMorgan Chase Bank*, Civ. No. 12-3996, 2012 WL 6553988, at *2 (N.D. Cal. Dec. 14, 2012). The Court ultimately finds that the cited LinkedIn account is not sufficient evidence of a Florida contact giving rise or relating to Plaintiff's claims.

Next, specific to Count V, Plaintiff contends that its declaratory judgment claim arises out of the copyright infringement notice that Mr. Smith received from Defendant via a web hosting server. Dkt. 44 at 13. However, the infringement notice only stated that Plaintiff's new "domain name or the content on [its] website *may* be infringing on a trademark *and/or* violating local laws or regulations." Dkt. 13-2 at 3 (emphasis added). Like Defendant's communications with Plaintiff's Florida employees, it is not clear that this notice emailed to a Florida resident even amounts to a contact with the forum state. To the extent that this constitutes a Florida contact, however, this vague notice does not give rise to Plaintiff's declaratory judgment claim. Plaintiff has not demonstrated that simply receiving a notice that something about its new website *may* be infringing upon a copyright *or* violating a local law or regulation is sufficient to give rise to Plaintiff's declaratory judgment claim.

Finally, Plaintiff posits that Defendant's filing of a trademark application with the USPTO in Virginia is a Florida contact that gives rise to each of its claims. Dkt. 44 at 11. While Plaintiff emphasizes that Defendant's trademark application included an attachment of the HSC Organics product label that lists Plaintiff's Florida business address, Dkt. 44 at 3, that is the only reference made to Florida in the application. Notably, Defendant listed an Indiana address as his mailing address. Dkt. 44-1 at 57. Due to its nominal connection to the state of

17

Florida, the Court finds that Defendant's filing a trademark application with the USPTO does not constitute a Florida contact.

Even if the act of filing a trademark application with the USPTO was a sufficient Florida contact giving rise to some of Plaintiff's claims, this action would not satisfy the second prong of the minimum contacts test, which requires a court to consider a defendant's purposeful availment under either the traditional purposeful availment test or the effects test. With such an attenuated connection to the state of Florida, the Court finds that the act of filing the trademark application, by itself, is neither an intentional tort aimed at Florida under the effects test nor an instance of Defendant's purposeful availment to the privileges of doing business in Florida under the traditional test.

Given Plaintiff has not carried its burden of satisfying the first two prongs of the minimum contacts test, the Court need not assess the third prong concerning traditional notions of fair play and substantial justice. The Court ultimately finds that Plaintiff has not shown that Florida's long-arm statute reaches Defendant or that this Court's exercising of personal jurisdiction over Defendant would comport with due process.

## **CONCLUSION**

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 33. Plaintiff's Amended Complaint, Dkt.

18

13, is **DISMISSED WITHOUT PREJUDICE**. If it so chooses, Plaintiff may file

a second amended complaint within **twenty-one (21) days** alleging additional facts

necessary for this Court to exercise personal jurisdiction over Defendant.

      **DONE AND ORDERED** at Tampa, Florida, on June 23, 2022.


                    */s/ William F. Jung*
                    **WILLIAM F. JUNG**
                    **UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record