UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HSC ORGANICS LLC,

    Plaintiff,

v.                                          Case No: 8:21-cv-1852-WFJ-CPT

RYAN L. BYMASTER,

    Defendant.
_____/

## ORDER

This matter comes before the Court on Defendant Ryan L. Bymaster's Second Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. 57. Plaintiff HSC Organics LLC filed a response in opposition, Dkt. 58, to which Defendant replied, Dkt. 61. Upon careful consideration, the Court denies Defendant's motion.

## BACKGROUND

Co-founded by Florida resident Greg Smith in 2013, Plaintiff is a Florida limited liability company that markets and sells organic products designed to treat hydrophobic soil and revitalize and maintain turf grass. Dkt. 53 ¶¶ 5, 25, 31. Defendant, a United States citizen and resident of Mexico, met Mr. Smith in 2009 while both men were living in Mexico. *Id.* ¶¶ 6, 24. Prior to their meeting, Mr. Smith was working to develop the products that the plaintiff company would later

be founded to market and sell to golf courses. *Id.* ¶ 25.

When Mr. Smith met with golf course maintenance professionals in Mexico to discuss his products, Defendant served as his translator. *Id.* ¶ 26. In their interactions, Mr. Smith supposedly shared with Defendant his plans to start a company called "HSC Organics" to sell the products. *Id.* ¶ 27. Defendant, however, claims the pair came up with the HSC Organics name together. Dkt. 57 at 6.

In 2011, while the men continued to work together in Mexico, Defendant registered the American Internet domain name "hscorganics.com." Dkt. 53 ¶ 29; Dkt. 57 ¶ 8. Defendant listed "LatAm Services" as the registrant and Mexico as the registrant country. Dkt. 53 ¶ 29. Plaintiff states that Mr. Smith did not know of or consent to Defendant registering the American website in this way. *Id.* Defendant denies that Mr. Smith lacked knowledge of this registration. Dkt. 57 ¶ 8. Regardless, Plaintiff asserts that it continuously used the American website to promote its products and services. Dkt. 53 ¶ 45. While Defendant contends that he owns this website because he paid for and registered it, Dkt. 57 ¶ 8, Plaintiff claims that it paid for and owns the website's content and domain name, Dkt. 53 ¶¶ 44, 96.

Roughly two years later, Mr. Smith co-founded the plaintiff company in

Apollo Beach, Florida, after beginning to live in Florida on a seasonal basis.[1] *Id.* ¶ 31. Since its founding, Plaintiff contends that it has continuously used the trademark "HSC ORGANICS" (the "Wordmark") to promote its products and services in interstate commerce. *Id.* ¶ 32. Plaintiff also states that, since July 2015, it has used a combination word-and-logo mark (the "Logo") that Mr. Smith and Defendant created with the help of a designer in Mexico. *Id.* ¶ 34; Dkt. 58-3 at 4−5. While Mr. Smith asserts that Plaintiff paid the designer to create the Logo, Dkt. 58-3 at 4, Defendant claims that he made that payment, Dkt. 57 at 9.

After creating the plaintiff company, Mr. Smith also founded HSC Organics SA de CV ("Mexican HSC Organics") to serve as Plaintiff's sister company in Mexico. Dkt. 53 ¶ 25. Plaintiff supplied its sister company with proprietary and patented formulations necessary to produce Plaintiff's products. *Id.* ¶¶ 42−43. Plaintiff also paid for marketing activities to benefit both itself and its sister company. *Id.* ¶ 44. Mr. Smith thereafter engaged Defendant, who resided in Mexico year-round, to market both companies and operate Mexican HSC Organics. *Id.* ¶ 36. Plaintiff states that Mr. Smith gave Defendant membership units in Mexican HSC Organics in 2015 as past and future consideration for his services to the company. *Id.* ¶ 38.

In June 2015, after receiving membership units in Plaintiff's sister company,

---

[1] From 2013 through 2016, Mr. Smith resided in Florida from May to October. Dkt. 58-3 at 3.

Defendant registered the Mexican Internet domain name "hscorganics.mx" and allegedly listed himself as the registrant without the knowledge or permission of Plaintiff or Mexican HSC Organics. *Id.* ¶¶ 39−40. As with the American website, Defendant denies that he registered the Mexican website without Plaintiff or Mr. Smith's knowledge. Dkt. 57 at 8. He also claims that he paid for the Mexican website's registration. *Id.* Conversely, Plaintiff contends that it paid for and owns the Mexican website's content and domain name. Dkt. 53 ¶¶ 44, 96. While facts surrounding both websites are in contest, the parties agree that Defendant was responsible for maintaining the American and Mexican websites' registrations and content. *Id.* ¶ 50; Dkt. 57 at 8.

    From roughly 2016 to 2021, Defendant and Mr. Smith appeared to have a harmonious business relationship. The record reflects that, during this period, Defendant created marketing materials for Plaintiff, managed the two websites, emailed Plaintiff's newsletters to over ninety Florida golf courses, and attended a January 2020 golf industry show in Orlando, Florida, on Plaintiff's behalf. *See* Dkt. 58-1 at 87−151. Defendant also received 250,000 membership units in the plaintiff company in January 2017. *Id.* at 86; Dkt. 53 ¶ 16(h). During these years, Plaintiff states that Defendant was in regular, weekly contact with Mr. Smith, who permanently relocated to Florida in 2017, and others working on behalf of Plaintiff in Florida. Dkt. 53 ¶¶ 16(a), (e)−(f); Dkt. 58-3 at 3. Defendant also requested and

received ingredients from Mr. Smith in Florida to create and sell approximately $500,000 worth of Plaintiff's patented product in Mexico during this time. Dkt. 53 ¶ 16(d), 43; Dkt. 58-3 ¶ 19. However, the parties' business relationship eventually deteriorated.

In December 2020, without the knowledge or consent of Plaintiff or Mr. Smith, Defendant filed a trademark application with the United States Patent and Trademark Office ("USPTO") in Virginia to register the Logo in his name. Dkt. 53 ¶ 51. In his application, as well as his answer to Plaintiff's opposition submitted to the USPTO, Defendant stated that he was the rightful owner of the Logo and suggested that Plaintiff was merely licensing the Logo from him. Dkt. 58-1 at 67−68, 75. Plaintiff contends that this has caused confusion in the marketplace and among its potential investors. Dkt. 53 ¶ 14(f).

In early 2021, Defendant allegedly took control of the American and Mexican websites without Plaintiff's permission to redirect Internet traffic from the former to the latter. *Id.* ¶ 52. According to Plaintiff, Defendant has since been using the Wordmark, Logo, and "confusingly similar" marks on the Mexican website without Plaintiff's consent. *Id.* ¶ 57. Plaintiff further alleges that Defendant has placed false copyright notices on the Mexican website, suggesting that Plaintiff is not the copyright owner of the website's content. *Id.* ¶ 59. Around this time, Defendant also purportedly caused emails sent to the email addresses of Plaintiff

5

and its employees—which had been listed on the websites—to be redirected to Defendant. *Id.* ¶¶ 49, 55. After learning of these actions, Plaintiff and Mexican HSC Organics ended their working relationship with Defendant. *Id.* ¶ 62.

After Defendant allegedly took control of the American and Mexican websites, Plaintiff states it was forced to create a new website, found at www.hscorganics.net. *Id.* ¶¶ 14(b), 60. Mr. Smith thereafter received an email from a web hosting server in October 2021 relaying a notice from Defendant. *Id.* ¶ 94. That notice stated that Plaintiff's new website domain or content "may be infringing on a trademark and/or violating local laws or regulations." *Id.*; Dkt. 53-2. Plaintiff contends that this notice made clear that Defendant was claiming ownership over the Wordmark, Logo, and American and Mexican websites' content. Dkt. 57 ¶ 95(a).

Based on the above allegations, Plaintiff brings its five-count Second Amended Complaint against Defendant. In Count I, Plaintiff asserts that Defendant engaged in unfair competition in violation of the Lanham Trademark Act ("Lanham Act"), 15 U.S.C. § 1125(a). *Id.* ¶¶ 69–74. Next, Count II alleges a violation of the Digital Millennium Copyright Act ("DCMA"), 17 U.S.C. § 1202(a). *Id.* ¶¶ 75–82. In Count III, Plaintiff brings a common law trademark infringement claim. *Id.* ¶¶ 83–89. Count IV asserts a violation of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), sections 501.201–.213, Florida

6

Statutes. *Id.* ¶¶ 90–92. Finally, Plaintiff's Count V seeks a declaratory judgment that Defendant does not own the rights to the Wordmark, Logo, or content found on the American and Mexican websites. *Id.* ¶¶ 93–99.

This Court previously dismissed without prejudice Plaintiff's Amended Complaint when it granted Defendant's first motion to dismiss for lack of personal jurisdiction. Dkt. 52. In doing so, the Court determined that Plaintiff had failed to show that the Court could exercise specific jurisdiction over Defendant under Florida's long-arm statute. *Id.* at 11. The Court permitted Plaintiff to amend its pleading in an effort to establish personal jurisdiction. *Id.* at 19. Accordingly, Plaintiff's Second Amended Complaint purports that Defendant is subject to both specific and personal jurisdiction. Dkt. 53 ¶¶ 11, 15. Defendant again moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. 57.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a district court may dismiss a complaint for lack of personal jurisdiction. Where a nonresident defendant asserts the absence of personal jurisdiction, a court must engage in a three-step, burden-shifting analysis. *Diulus v. Am. Express Travel Related Servs. Co.*, 823 F. App'x 843, 848 (11th Cir. 2020). First, the plaintiff bears the initial burden of alleging sufficient facts in its complaint to establish a prima facie case of

jurisdiction. *Id.* (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280 (11th Cir. 2009)). Next, if the complaint contains sufficient facts, and the defendant submits affidavit evidence to support its position that personal jurisdiction is lacking, the burden shifts back to the plaintiff to produce affidavits or other competent evidence supporting jurisdiction. *Id.*; *Mazer*, 556 F.3d at 1274. Finally, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Diulus*, 823 F. App'x at 848 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

## ANALYSIS

Whether a district court sitting in diversity has personal jurisdiction over a defendant is governed by a two-part analysis. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). The court must first ask whether the relevant state long-arm statute is satisfied. *Id.* If the court answers that question in the affirmative, the court must next determine whether exercising personal jurisdiction over the defendant comports with the minimum contacts requirement of the Fourteenth Amendment's Due Process Clause. *Id.*

Here, Plaintiff asserts that Defendant is subject to both general and specific jurisdiction under Florida's long-arm statute. Dkt. 53 ¶¶ 11, 15. In considering whether Florida's long-arm statute reaches Defendant, the Court first analyzes

8

Plaintiff's claim of general jurisdiction.

Pursuant to section 48.193(2), Florida Statutes, a court in Florida may exercise general personal jurisdiction over any claims against a defendant—even if those claims do not involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. § 48.193(2)). Florida courts have construed "substantial and not isolated activity" to mean "continuous and systematic general business contact" with Florida. *Autonation, Inc. v. Whitlock*, 276 F. Supp. 2d 1258, 1262 (S.D. Fla. 2003) (quoting *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999).

When assessing a defendant's contacts for purposes of general jurisdiction, a court "should consider all of the defendant's contacts collectively over the relevant period of years prior to the filing of the complaint." *Simple Signman Sys., Inc. v. Hershkop*, No. 3:15-cv-178-J-20MCR, 2015 WL 12830470, at *4 (M.D. Fla. July 10, 2015) (internal quotes omitted). A finding of "continuous and systematic" contacts satisfies not only Florida's long-arm statute, but the due process requirement of minimum contacts. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318−19 (11th Cir. 2006); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476−77(1985).

In its Second Amended Complaint, Plaintiff has alleged contacts that

establish a prima facie case of general jurisdiction. These asserted contacts include, but are not limited to, the following: Defendant's regular business communications with those working in Florida on behalf of Plaintiff; Defendant's receipt of product ingredients from Mr. Smith in Florida to sell Plaintiff's product in Mexico; Defendant's role in, and attendance at, the Orlando golf industry show on behalf of Plaintiff; Defendant's creation of marketing materials, labels, and business cards for Plaintiff; Defendant's distribution of newsletters to numerous Florida golf courses on Plaintiff's behalf; and Defendant's ownership of 250,000 membership units in the plaintiff company. Dkt. 53 ¶ 16.

With the burden shifting to Defendant upon this showing, Defendant contends that he "has had no continuous or systematic business over any period of time in the state of Florida." Dkt. 57 at 17. Citing his deposition testimony and declaration, Defendant states that he has only met with Mr. Smith in Florida on two occasions and has never had an agreement to work on behalf of Plaintiff. *Id.* at 7. Instead, Defendant claims he started his own business selling soil and turf treatment products in Mexico using the HSC Organics name that both he and Mr. Smith created. *Id.* at 6–7.

In response, Plaintiff, provides details and evidence of the contacts alleged in its Second Amended Complaint. Plaintiff first states that Defendant called, texted, and/or emailed Mr. Smith in Florida about Plaintiff's business matters on a

weekly basis for at least three years. Dkt. 58 at 13–14. Bolstering this assertion, Plaintiff points to numerous emails and texts exchanged between Defendant and Mr. Smith or others working on behalf of the plaintiff company in Florida. Dkt. 58-1 at 87–231. Indeed, a contact considered by a court assessing general jurisdiction is a defendant's regular business communications directed into the forum state. *See, e.g.*, *Hershkop*, 2015 WL 12830470, at *9 (noting that defendant "directed emails and phone calls into Florida throughout the thirteen-year business relationship"); *Achievers Unlimited, Inc., v. Nutri Herb, Inc.*, 710 So. 2d 716, 720 (Fla. 4th DCA 1998) (recognizing that defendant "had phone contact with appellant up to several times per week" for three years).

All of record emails that were exchanged by Defendant and those working on behalf of Plaintiff in Florida from 2018 to early 2021 concern Defendant's role within the plaintiff company. *See* Dkt. 58-1 at 87–161. In addition to providing his input on Plaintiff's business plan in these emails, Defendant frequently sought Mr. Smith's feedback and approval on Defendant's work related to marketing materials, business cards, website content, and product labels for the plaintiff company. *See id.* As evidenced by these emails and Defendant's own admission, Defendant also facilitated sales of Plaintiff's Florida-based products by sending customer leads to Mr. Smith in Florida. *Id.* at 60–61, 152–62.

The record likewise contains hundreds of business-related text messages sent

11

between Defendant and Mr. Smith in 2019 and 2020. *Id.* at 166−231. In these texts, Defendant requests that Mr. Smith send him product ingredients to manufacture Plaintiff's patented product, asks for Mr. Smith's input on newsletter content to be sent to Florida golf courses, and exchanges information with Mr. Smith about Plaintiff's product invoices and sales. *See id.* Both the emails and texts also reference business-related phone calls between Defendant and Mr. Smith. *See, e.g.*, *id.* at 90, 130, 166.

Additionally, Plaintiff contends that Defendant was responsible for creating and emailing newsletters marketing its products and services to over ninety golf courses in Florida from 2018 to 2021. Dkt. 58 at 4, 13. While Defendant stated at his deposition that the subject newsletters were actually used to market his own business in Mexico, he conceded that he created and distributed these marketing newsletters carrying the HSC Organics name to many Florida golf courses during the years alleged by Plaintiff. Dkt. 58-1 at 49−50. Emails sent by Defendant to Mr. Smith support Plaintiff's position that these newsletters were sent to over ninety Florida golf courses at a time. *Id.* at 145−50.

Plaintiff also claims, and Defendant does not dispute, that Defendant repeatedly requested and received ingredients from Mr. Smith in Florida to create and sell Plaintiff's patented product in Mexico. Dkt. 57 at 7; Dkt. 58 at 13. In his declaration, Mr. Smith stated that he sent Defendant enough ingredients from

12

Florida to make approximately $500,000 worth of Plaintiff's patented product. Dkt. 58-3 at 5. Defendant does not contest this valuation, nor does he contest Plaintiff's assertion that he sold those products in Mexico with labels listing Plaintiff's name and Florida address. Dkt. 58 at 5.

Next, Plaintiff points to Defendant's preparation for and attendance at the January 2020 golf industry show in Orlando as evidence of Defendant's business contacts with Florida. *Id.* at 4–5. While Defendant appears to downplay this contact by stating that he attended this trade show to represent his own business in Mexico, Dkt. 57 at 7, the record evidence casts doubt on this assertion. From October 2019 to January 2020, Defendant exchanged numerous emails with Mr. Smith and others working on behalf of Plaintiff in Florida regarding Plaintiff's preparation for the trade show. Dkt. 58-1 at 98–126. These emails reflect that Defendant registered the plaintiff company to attend the trade show, made shirts with the Logo for himself and others attending on behalf of Plaintiff to wear, and designed a banner and marketing materials for Plaintiff's booth. *See id.* Defendant also admitted to working Plaintiff's booth at the trade show. *Id.* at 24.

While Defendant has stressed that his trade show attendance was his only business trip to Florida between 2018 and 2020, the fact that a defendant had a limited physical presence, or even no physical presence, in Florida does not prevent the exercise of general jurisdiction under the state's long-arm statute. *See*

13

*Burger King*, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."); *see also Diamond Resorts U.S. Collection Dev., LLC v. Neally*, No. 6:20-cv-1516-CEM-EJK, 2022 WL 2056197, at *5 (M.D. Fla. Jan. 27, 2022) (holding that defendants who did "not maintain an office or even travel to Florida" were still subject to general jurisdiction under Florida's long-arm statute).

Lastly, Plaintiff notes that Defendant owns 250,000 membership units in the plaintiff company based in Florida. Dkt. 58 at 14. Defendant concedes that Mr. Smith purportedly gave him these membership units, though he states that he has not received proof of his ownership of these units aside from "a generic certificate and related emails from Smith." Dkt. 57 at 10. That certificate, which is included in the record, reflects that Defendant received 250,000 membership units in the plaintiff company on January 12, 2017. Dkt. 58-1 at 86.

The Court finds that the above contacts, considered collectively and with all reasonable inferences drawn in Plaintiff's favor, subject Defendant to general jurisdiction under Florida's long-arm statute. From at least 2018 through 2020, Defendant regularly communicated with Mr. Smith and others in Florida concerning his work for Plaintiff, as evidenced by hundreds of text messages and

emails included in the record. Defendant drafted and sent multiple newsletters marketing Plaintiff's products to over ninety Florida golf courses at a time, and he facilitated sales of Plaintiff's Florida-based products by sending leads to Mr. Smith. Moreover, he created business cards, marketing materials, website content, and product labels for the plaintiff company in Florida, all while regularly seeking Mr. Smith's feedback and approval. Defendant, who owned 250,000 membership units in the plaintiff company, also requested substantial quantities of ingredients from Mr. Smith in Florida to manufacture and sell $500,000 worth of Plaintiff's patented product in Mexico with a label featuring Plaintiff's name and Florida address. Moreover, Defendant represented Plaintiff at a Florida trade show, for which he helped Plaintiff prepare in the preceding months. While any one of these contacts alone may not be sufficient, together they establish general jurisdiction. *See Woods*, 739 So. 2d at 621.

Given that Defendant's contacts with Florida satisfy the requirements for general jurisdiction under section 48.193(2), due process is also satisfied. *See Snow*, 450 F.3d at 1318–19; *Burger King*, 471 U.S. at 476–77; *Neally*, 2022 WL 2056197, at *5 n.8. The Court therefore need not delve into whether exercising jurisdiction over Defendant comports with traditional notions of fair play and substantial justice. In any event, Defendant has not articulated how litigating in Florida would unduly burden him. With the Court having determined that

15

Defendant is subject to general jurisdiction under section 48.193(2), it need not consider the existence of specific jurisdiction in this case.[2]

## CONCLUSION

For the foregoing reasons, Defendant's Second Motion to Dismiss for Lack of Jurisdiction, Dkt. 57, is **DENIED**. Defendant shall answer Plaintiff's Second Amended Complaint within fourteen (14) days.

**DONE AND ORDERED** at Tampa, Florida, on August 23, 2022.

>  */s/ William F. Jung*
> **WILLIAM F. JUNG**
> **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

---

[2] To the extent that Defendant claims this Court must adhere to its due process determinations in its previous order, that argument lacks merit. A court is free to reconsider its prior rulings so long as the case remains within its jurisdiction. *See Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991). By dismissing Plaintiff's Amended Complaint without prejudice, Dkt. 52, the Court recognized that Plaintiff could potentially establish personal jurisdiction over Defendant with additional facts and arguments. Plaintiff did so in its Second Amended Complaint.